## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHYRIE A. WHEATON,

                    Plaintiff,

      v.

ANDREW M. SAUL,
Commissioner of Social Security,

            Defendant.

CIVIL ACTION NO. 3:19-CV-01920

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Chyrie A. Wheaton brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 12; Doc. 13; Doc. 16). For the reasons set forth below, the Court directs that the Commissioner's decision be **VACATED**, and the case be **REMANDED** for further consideration.

### I.    BACKGROUND AND PROCEDURAL HISTORY

In January 2016, Wheaton filed an application under Title II for disability insurance benefits, claiming disability beginning October 31, 2014, due to irritable bowel syndrome (IBS), panic attacks, anxiety, fibromyalgia, thyroiditis with thyrotoxicosis, Bell's palsy, Gastroesophageal Reflux Disease (GERD), cholangitis, chronic migraines, Hashimoto's disease with Raynaud's disease, Lyme disease, lupus, depression, and factor five. (Doc. 11-7,

at 27). The Social Security Administration initially denied the application in August 2016, prompting Wheaton's request for a hearing, which Administrative Law Judge (ALJ) Lynette Gohr held on September 17, 2018. (Doc. 11-2, at 35). In a written decision dated November 15, 2018, the ALJ determined that Wheaton is not disabled and therefore not entitled to benefits under Title II. (Doc. 11-2, at 10). The Appeals Council subsequently denied Wheaton's request for review. (Doc. 11-2, at 2).

On November 6, 2019, Wheaton commenced the instant action. (Doc. 1). The Commissioner responded January 15, 2020, providing the requisite transcripts from Wheaton's disability proceedings. (Doc. 10; Doc. 11). The parties then filed their respective briefs, with Wheaton raising one principal bases for reversal or remand. (Doc. 17; Doc. 23).

## II. STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 20 C.F.R. §§ 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

A.   ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by

such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Wheaton was disabled, but whether the Commissioner's determination that Wheaton was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In her written decision, the ALJ determined that Wheaton "has not been under a disability, as defined in the Social Security Act, from October 31, 2014, through the date of this decision. (Doc. 11-2, at 24). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

A.    STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Wheaton "has not engaged in substantial gainful activity since October 31, 2014, the alleged onset date," and therefore proceeded to step two of the analysis. (Doc. 11-2, at 15).

B.    STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Wheaton had four medically determinable impairments—major depressive disorder, panic disorder, somatic symptom disorder, and chronic pain syndrome—all severe. (Doc. 11-2, at 15).

C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination

of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Wheaton's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 11-2, at 16).

### D.   Residual Functional Capacity

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Wheaton alleged that her medical impairments caused difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, and climbing stairs. (Doc. 11-7, at 10). Wheaton further alleged that her medical impairments affected her ability to see, retain information, complete tasks, concentrate, comprehend, follow instructions, use

her hands (due to tremors), and get along with others. (Doc. 11-7, at 10). The ALJ found that while Wheaton's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Wheaton's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 11-2, at 19). The ALJ went on to detail Wheaton's medical records and treatment history. (Doc. 11-2, at 18-23). After weighing and considering the evidence, the ALJ determined that Wheaton had the, "[RFC] to perform sedentary work as defined in 20 C.F.R. 404.1567(a)," with additional limitations:

> [Wheaton] can occasionally climb ramps and stairs, but never climb ladders ropes and scaffolds; occasionally balance, stoop, kneel and crouch but never crawl; frequently reach all directions with the bilateral upper extremities; avoid concentrated exposure to extreme cold, dust, odors, fumes, pulmonary irritants and vibration; never work at unprotected heights or around dangerous machinery; can tolerate no more than moderate levels of noise as defined in the [Dictionary of Occupational Titles] and its related publications; should avoid working with bright lights or flickering lights such as would be experienced in welding or cutting metals; limited to simple routine tasks; limited to simple work-related decisions; minimal changes in work routines and processes; no strict production quotas; and she is able to work in a low stress work environment defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine and processes.

(Doc. 11-2, at 18).

E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §

404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, based on testimony adduced from a vocational expert at Wheaton's administrative hearing, the ALJ determined that Wheaton was unable to perform her past relevant work and thus, proceeded to step five of the sequential analysis. (Doc. 11-2, at 23).

    F.   S<small>TEP</small> F<small>IVE</small>

    At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Wheaton's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Wheaton could have performed. (Doc. 11-2, at 23-24). In making that determination, the ALJ relied on the vocational expert's testimony that Wheaton was able to perform the requirements of occupations such as a call-out operator, food and beverage order clerk, and charge account clerk with open positions ranging from 41,900 to 184,050 nationally. (Doc. 11-2, at 24). Accordingly, the ALJ determined that Wheaton was not disabled and denied her application for benefits. (Doc. 11-2, at 24).

## IV.   DISCUSSION

Wheaton advances several arguments on appeal. (Doc. 17, at 7). Most notably, Wheaton asserts that the ALJ erroneously relied on lay opinion when considering the record evidence, including the opinion evidence of record, to determine that her symptom allegations were not supported by the record. (Doc. 17, at 7-15). Specifically, Wheaton argues that the ALJ used lay opinion to mischaracterize the evidence and opinion evidence concerning her chronic conditions of fibromyalgia, migraines, IBS, chronic thyroiditis, chronic pain, panic disorder, cognitive impairment, depression and anxiety in order to support a finding of not disabled. Additionally, Wheaton contends that the ALJ failed to consider her fibromyalgia as a severe or nonsevere impairment and failed to evaluate her fibromyalgia pursuant to Social Security Ruling (SSR) 12-2p. (Doc. 17, at 12-15). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and reflects a proper application of the law and regulations. (Doc. 10, at 3). For the reasons set forth below, the Court directs that this case be remanded for further consideration by the Commissioner.

SSR 12-2p "provides guidance on how [the Social Security Administration] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia. *Stevens v. Berryhill*, 404 F. Supp.3d 933, 942 (M.D. Pa 2019); *see also* SSR 12-2p, 2012 WL 3104869 at *1-6. Ruling 12-2p presents three requirements for a finding of fibromyalgia as a medically determinable impairment: (1) a diagnosis by a licensed physician (a medical or osteopathic doctor); (2) specified diagnostic criteria are met, and; (3) the diagnosis is not inconsistent with the other evidence in the person's case record. *Stevens*, 404 F. Supp. at 942; *see also* SSR 12-2p, 2012 WL 3104869 at *2-3. Specifically, section II.A., provides for the use of the 1990 ACR Criteria for the Classification of Fibromyalgia in determining whether a

claimant has a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869 at *2-3. For example, the agency may find that a claimant has a medically determinable impairment of fibromyalgia if he or she possesses all the following:

> [1]A history of widespread pain—that is pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)— that has persisted (or that persisted) for at least three months. The pain may fluctuate in intensity and may not always be present. [2] At least 11 positive tender points on physical examination. The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist. The 18 tender point sites are located on each side of the body at the: occiput (base of the skull); [l]ow cervical spine (back and side of the neck); trapezius muscle shoulder; supraspinatus muscle (near the shoulder blade; [s]econd rib (top of the rib cage near the sternum or breast bone); [l]ateral epicondyle (outer aspect of the elbow); gluteal (top of the buttock); [g]reater trochanter (below the hip); and [i]nner aspect of the knee.[2] [3] Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia]. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid).

> SSR 12-2p, 2012 WL 3104869 at *2-3.

Section II.B. provides for the use of the 2010 ACR Preliminary Diagnostic Criteria in determining whether a claimant has a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869 at *3. For example, the agency may find that a claimant has a medically determinable impairment of fibromyalgia if he or she possesses all the following:

> [1] A history of widespread pain (see section II.A.I.); [2] Repeated

---

[2] Social Security Ruling (SSR) 12-2p further notes that in testing the tender-points sites, the physician should perform digital palpation with an approximate force of nine pounds (approximately the amount of the pressure needed to blanch the thumbnail of the examiner). The physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site. SSR 12-2p, 2012 WL 3104869 at *3.

manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and [3] Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

SSR 12-2p, 2012 WL 3104869 at *3.

The Court of Appeals has held that an ALJ must consider all "impairments a claimant says [s]he has or about which the ALJ receives evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

A. THE RECORD IS DEVOID OF ANY INDICATION THAT THE ALJ CONSIDERED WHEATON'S FIBROMYALGIA

Guided by these legal tenets, the Court is compelled to remand this case for the sole reason that the ALJ failed to consider – or even reference – Wheaton's fibromyalgia. (See Doc. 11-2, at 8-23). Wheaton testified and reported to suffering from the following impairments: fibromyalgia, chronic migraines, Hastimoto's disease, major depressive disorder, generalized anxiety disorder, IBS, Bell's palsy, recurrent kidney stones, Factor V Leiden, a blood clotting disorder, chronic pain syndrome, panic attacks, major cognitive and memory issues, insomnia, lumbago, Raynaud's disease, restless leg syndrome, disorders of the back with pain throughout, and GERD. (Doc. 11-2, at 40; Doc. 11-7, at 27).

At her administrative hearing, Wheaton was asked by the ALJ to identify the medical conditions, which most significantly affected her ability to work. (Doc. 11-2, at 54). Wheaton listed a number of medical conditions, including fibromyalgia. (Doc. 11-2, at 54). Specifically, Wheaton testified and reported that her fibromyalgia caused chronic pain all over her body and limited her ability to breathe and swallow. (Doc. 11-2, at 54; Doc. 11-2, at 59-62). Wheaton further alleged that her fibromyalgia caused difficulties sitting – as she could not sit

for more than ten minutes, standing and walking for long periods of time, and lifting objects and reaching overhead. (Doc. 11-2, at 59-60). As for her activities of daily living, Wheaton testified and reported that fibromyalgia limited her ability to perform household chores, as she frequently needed assistance doing laundry, shopping for groceries, and preparing meals. (Doc. 11-2, at 59-65). Moreover, Wheaton asserted that her fibromyalgia and other medical conditions, limited her ability to manage her personal care, such as washing and brushing her hair, showering, and dressing herself. (Doc. 11-2, at 59-71; Doc. 11-7, at 6).

Consequently, the Court finds that the objective medical evidence, including the opinion evidence, supports Wheaton's testimony concerning the existence of fibromyalgia and the ways her fibromyalgia might contribute to impeding her functionality. For example, the medical record reveals that Wheaton was diagnosed with fibromyalgia and upon physical examination, Wheaton exhibited multiple tender points, chronic fatigue, muscle weakness, and numbness and tingling. (Doc. 11-71, at 46). The medical record further reflects that due to her fibromyalgia, Wheaton experiences underlying symptoms of diffuse myofascial pain in the context of depression, anxiety, stress, poor sleep, fatigue, migraines, muscle spasms, and lack of exercise. (Doc. 11-52, at 39-52; Doc. 11-63, at 57; Doc. 11-71, at 58-60).

As for the opinion evidence of record, the medical record reflects that Wheaton treated with Dr. Michael Weingarten, her treating rheumatologist, since April 2016. (Doc. 11-71, at 46). In November 2016, May 2017, September 2017, and January 2018, Dr. Weingarten opined that "[Wheaton] has significant limitations in her ability to work due to fibromyalgia." (Doc. 11-52, at 47-51; Doc. 11-71, at 59-62). Additionally, in August 2018, Dr. Weingarten opined that Wheaton would be off task at least 25 percent of the time and absent more than four days per month due to her medical conditions. (Doc. 11-71, at 46-50). The ALJ, however,

- 12 -

accorded "little" weight to Dr. Weingarten's opinion, finding that Dr. Weingarten's opinions were vague statements and not supported by his own findings reported in his treatment notes. (Doc. 11-2, at 22).

Wheaton was also treated by her primary treating physician—Dr. Dilbagh Signh, for her fibromyalgia. (Doc. 17, at 12). In September 2016, upon physical examination and due to her medical conditions, Dr. Signh opined that Wheaton could walk and stand for less than an hour, and was only capable of sitting for one to two hours during an eight-hour workday. (Doc. 11-35, at 54). Dr. Signh further opined that Wheaton was only capable of lifting less than five pounds occasionally, was restricted in pushing and pulling, would require rest periods three to five times per day for one to two hours, and up to five hours at a time. (Doc. 11-35, at 55). The ALJ, however, accorded Dr. Signh's opinion "little" weight, concluding that his opinions contradicted with Wheaton's reported abilities in 2018. (Doc. 11-2, at 22). Specifically, the ALJ noted that Wheaton's discharge report from Cleveland Hospital noted "excellent progress." (Doc. 11-2, at 22). For example, the discharge report indicated that Wheaton could lift and carry up to twenty pounds (while at the start she could only lift and carry seven pounds), she could stand, walk, and sit for 30 minutes at one time, and climb 111 steps in one minute. (Doc. 11-2, at 22). Additionally, the ALJ explained that the discharge report demonstrated that Wheaton could engage in household chores, including mopping, cleaning tubs, sweeping, doing dishes and laundry, and cooking. (Doc. 11-2, at 22).

Wheaton's treating therapist, Laurel Stanly, Licensed Clinical Social Workers (LCSW), also found that Wheaton's fibromyalgia caused limiting effects on her ability to work. (Doc. 17, at 13). In January 2018, Stanly opined that Wheaton was seriously limited in her ability to understand and remember very short and simple instructions, maintain attention

for two-hour segments, maintain regular attendance, complete a normal workday and workweek, perform at a consistent pace, deal with normal work stress, and deal with stress of semiskilled and skilled work. (Doc. 11-42, at 103-108). Additionally, Stanly opined that Wheaton had limited satisfactory ability to interact with others, get along with co-workers or peers, and maintain socially appropriate behaviors. (Doc. 11-42, at 103-108). As for her physical impairments, Stanly opined that "unless [Wheaton's physical problems are adequately addressed, I doubt that [Wheaton's] ability to work would improve" and that Wheaton would function better if her physical disorders were cured. (Doc. 11-42, at 103-108).

Stanly further opined that Wheaton had moderate limitations in her ability to understand, remember, or apply information, concentrate, persist, or maintain pace and adapt, and only mild limitations in her ability to interact with others. (Doc. 11-71, at 70-75). The ALJ, however, accorded "very little" weight to Stanly's statements, finding that her conclusions were contradictory and not supported by the record. (Doc. 11-2, at 22). The ALJ further explained that while receiving treatment at the Cleveland Clinic it was noted on numerous occasions that Wheaton had no difficulty engaging in therapy all day long. (Doc. 11-2, at 22).

The Commissioner argues that Wheaton unpersuasively alleges that the ALJ must evaluate her fibromyalgia pursuant to SSR 12-2p, because substantial evidence supports the ALJ's credibility determination as to Wheaton's symptoms. (Doc. 22, at 21; Doc. 17, at 13). The Commissioner contends that if a diagnosis of fibromyalgia is established pursuant to SSR 12-2p, then a claimant's fibromyalgia is evaluated in the same manner as any other medically

- 14 -

determinable impairment—the two-step process set forth under SSR 96-7p.[3] (Doc. 22, at 22).
The two-step process, is as follows:

> [The] [f]irst step of the symptom evaluation process[:]There must be medical signs and findings that show the person has [a medically determinable impairment] which could reasonably be expected to produce the pain or other symptoms alleged. Fibromyalgia which [the agency] determined to be a [medically determinable impairment] satisfies the first step of [the] two-step process for evaluating symptoms. The [s]econd step of the symptom evaluation process[:] Once a [medically determinable impairment] is established, [the agency] then evaluates the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the [claimant'] capacity for work.

> SSR 12-2p, 2012 WL 3104869 at *5.

In the present case, the Commissioner argues that the ALJ concluded that Wheaton had a severe impairment of "chronic pain syndrome." Thus, the ALJ proceeded to step two, assessing Wheaton's subjective statements concerning her symptoms and functional limitations of fibromyalgia. (Doc. 22, at 23). In doing so, the Commissioner argues that the ALJ reasonably concluded that Wheaton's statements were not entirely consistent with the medical evidence, including the objective medical findings, as well as other evidence. (Doc. 22, at 21). Thus, the ALJ concluded that Wheaton's fibromyalgia did not support a finding of disability. (Doc. 22, at 25).

The Court is not persuaded by the Commissioner's argument as to this issue. The law is clear, "[a]n ALJ is required to consider impairments a claimant says [s]he has, or about which the ALJ receives evidence." *Rutherford*, 399 F.3d at 552. Here, Wheaton testified and reported that fibromyalgia was a medical condition that limited her ability to work. (Doc. 11-

---

[3] SSR 96-7p (Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements) was superseded by SSR 16-3p (Evaluation of Symptoms in Disability Claims) effective March 28, 2016.

2, at 54; Doc. 11-7, at 27). Additionally, the objective medical evidence demonstrates that Wheaton was diagnosed with fibromyalgia and suffers from underlying symptoms of diffuse myofascial pain in the context of depression, anxiety, stress, poor sleep, fatigue, migraines, muscle spasms, and lack of exercise. (Doc. 11-52, at 39-52; Doc. 11-63, at 57; Doc. 11-71, at 58-60). Moreover, the opinion evidence of record supports the existence of fibromyalgia and the ways Wheaton's fibromyalgia might contribute to impeding her functionality. Nonetheless, the ALJ failed to consider Wheaton's fibromyalgia pursuant to SSR 12-2p, and instead concluded that based upon her review of the entire medical record, Wheaton had a severe impairment of "chronic pain syndrome." (Doc. 11-2, at 15). On this score, the Court cannot conclude that the ALJ's determination is supported by substantial evidence. To the contrary, the medical record demonstrates an overwhelming amount of evidence to support Wheaton's contentions that she suffers from fibromyalgia. (Doc. 11-35, at 17-20; Doc. 11-35, at 45, Doc. 11-36, at 5-98; Doc. 11-39, at 30; Doc. 11-52, at 49; Doc. 11-52, at 92; Doc. 11-53, at 1-60); Doc. 11-55, at 7-15; Doc. 11-63, at 48-58; Doc. 11-64, at 47; Doc. 11-67, at 28-30; Doc. 11-68, at 43; doc. 11-70, at 29; Doc. 11-71, at 46-50; Doc. 11-71, at 59; Doc. 11-72, at 13-27; Doc. 11-73, at 3; Doc. 11-74, at 29). The ALJ, however, made no mention of this medical condition.[4] Therefore, there is no indication that the ALJ considered Wheaton's fibromyalgia in evaluating her limitations. Accordingly, the Court recommends that this case be remanded to the ALJ for further evaluation, development, and assessment of the medical record.

---

[4] Chronic pain syndrome and fibromyalgia are different disorders, often with different symptoms. *See* Donna Christiano, *Chronic Pain syndrome vs. fibromyalgia,* Healthline (Dec. 1, 2018), https://www.healthline.com/health/chronic-pain-syndrome#vs.-fibromyalgia

B.   THE COURT DECLINES TO ADDRESS WHEATON'S REMAINING
ARGUMENTS

Because the Court recommends vacatur of the ALJ's decision based on her failure to address Wheaton's fibromyalgia pursuant to SSR 12-2p, the Court further declines to address Wheaton's remaining arguments, as "[a] remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Wheaton's additional contentions would be futile given that the ALJ's consideration of Wheaton's fibromyalgia, in combination with her other impairments, may yield a different result.

V.   **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In this case, the appropriate measure is to remand for further development of the record.

VI.   **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Wheaton disability

- 17 -

benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order will follow.

**Dated: February 25, 2021**                    *s/ Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **United States Magistrate**

- 18 -